SHELL PETROLEUM CORPORATION, RESPONDENT, v. STURDIVANT BANK
IN CHARGE OF O. H. MOBERLY, STATE FINANCE COMMISSIONER,
APPELLANT.—87 S. W. (2d) 1064.

St. Louis Court of Appeals.   Opinion filed December 3, 1935.

*R. F. Baynes* for appellant.

*C. S. Gentry* and *Charles H. Wager* for respondent.

SUTTON, C.—This is an action for the establishment of a preferred claim against the Sturdivant Bank, of Cape Girardeau, which is in charge of the finance commissioner for liquidation.

The trial resulted in a judgment allowing plaintiff's claim as a preferred claim in the sum of $458.34. The defendant appeals.

The cause was tried on an agreed statement of facts. According to this statement, the Sturdivant Bank, of Cape Girardeau, on Saturday, November 5, 1932, closed for business at three o'clock P. M., the usual time for closing. It never re-opened, and on the following Monday was taken over by the commissioner of finance.

For some time prior to September 22, 1932, the Peoples Oil Company of Cape Girardeau, a jobber handling petroleum products marketed by the Shell Petroleum Corporation, was in financial difficulties and owed said Shell Petroleum Corporation and others various sums of money. On September 22, 1932, the Shell Petroleum Corporation established an agent, L. I. Warren, at Cape Girardeau, to assist the Peoples Oil Company in various matters and to work out such plans as he could for the reduction of the account of the Peoples Oil Company with the Shell Petroleum Corporation, commencing with September 22, 1932, and from time to time petroleum products would be shipped to L. I. Warren as agent for the Shell Petroleum Corporation at Cape Girardeau, and he would turn them over to the Peoples Oil Company when it paid for them. Commencing with September 22, 1932, and from time to time thereafter, the financial condition of the Peoples Oil Company would become such that payments of varying amounts could be made, and were made, on its account with the Shell Corporation. In paying for petroleum products and in making payments on its account the Peoples Oil Company would issue checks to the Shell Petroleum Corporation on the Sturdivant Bank, and these in turn would be handed to L. I.

1248

Warren and he would endorse them on behalf of the Shell Petroleum Corporation for exchange only, that is, he would stamp on the back of the checks, "Endorsed for exchange only—payable to the order of Shell Petroleum Corporation—L. I. Warren. Jobber's Service Department—Employees not authorized to endorse for any other purpose," after which he would take the checks to the Sturdivant Bank and receive from said bank drafts in amounts equal to the amounts of the check. Thereafter, L. I. Warren would forward the drafts to the home office of the Shell Petroleum Corporation in St. Louis, where in the usual course they would be deposited and paid to the Shell Petroleum Corporation.

On November 4, 1932, L. I. Warren in accordance with his custom presented to the Sturdivant Bank a check dated November 3, 1932, in the sum of $177.23, drawn by the Peoples Oil Company on its account with the Sturdivant Bank, payable to the Shell Petroleum Corporation, and endorsed by him on behalf of the Shell Petroleum Corporation in the manner hereinbefore outlined, and received in exchange therefor a draft payable to the Shell Petroleum Corporation for the amount of $177.01, which amount equals the amount of the Peoples Oil Company check less exchange charges. The Peoples Oil Company had on deposit to its credit with the bank an amount sufficient to pay the check issued by it, and the check was marked paid and charged to the account of the Peoples Oil Company on November 4, 1932.

On November 5, 1932, at three-four P. M., which time was four minutes after the usual closing time of the Sturdivant Bank, L. I. Warren presented to the Sturdivant Bank two checks of the Peoples Oil Company, dated November 4, 1932, and November 5, 1932, payable to the Shell Petroleum Corporation, duly endorsed by him, on behalf of the Shell Petroleum Corporation, in the manner hereinbefore outlined, in the amounts of $160.70 and $121.07, respectively, and in exchange therefor received drafts drawn by the Sturdivant Bank on the First National Bank in St. Louis, both dated November 5, 1932, and in the amounts of $160.48 and $120.85, respectively, which sums represent the amounts of the checks less exchange charges. The Peoples Oil Company had on deposit to its credit in the Sturdivant Bank sufficient funds to pay the two checks issued by it, and they were marked paid and charged to its account with the bank on November 5, 1932.

Upon receipt of the three drafts aforesaid, L. I. Warren promptly forwarded them through the United States mails to the home office of the Shell Petroleum Corporation at St. Louis. There they were promptly endorsed and placed in the usual banking channels by Shell Petroleum Corporation for payment. But payment of same was refused because of the closing of the Sturdivant Bank.

The Shell Petroleum Corporation never maintained an account with the Sturdivant Bank.

Commencing with the time the drafts were issued, and up to and including the time of its closing, the Sturdivant Bank had in its tills and vaults sufficient cash to pay said drafts and had on deposit in its account with the First National Bank in St. Louis sufficient funds to pay said drafts.

The sole question involved here, which is one of first impression in this State, is whether or not, under the facts stated, the Shell Petroleum Corporation is entitled to a preferred claim against the assets of the Sturdivant Bank in the amount of $458.34.

The solution of this question involves a construction of the second subdivision of section 5575 of the recently enacted Bank Collection Code, Revised Statutes 1929, Mo. Stat. Ann., sec. 5575, p. 7715, as follows:

''When a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business . . . after having charged such item or items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank.''

Defendant insists that this provision is inapplicable to the transaction under review here, and cites, as controlling, McClure Garage v. Sturdivant Bank (Mo. App.), 76 S. W. (2d) 438. In that case it was apparently conceded or assumed that the statute was inapplicable, since the purchase of the draft involved was a cash transaction over the counter of the bank, and a preference was denied on authority of Bank of Republic v. Republic State Bank, 328 Mo. 848, 42 S. W. (2d) 27.

The purchase of the draft involved in the McClure Garage case, being a cash transaction over the counter of the bank, was clearly not within the terms of the statute. But it is equally clear, we

think, that the transaction involved here is within the terms of the statute. To hold otherwise we would have to rewrite the statute. Plaintiff's checks were presented to the drawee bank for payment. The drawee bank had on deposit to the credit of the drawer an amount equal to the checks. The drawee bank failed or closed for business after having charged the checks to the account of the drawer but without such checks having been paid or settled for by the drawee bank either in money or by an unconditional credit given on its books or on the books of any other bank. We can see no reason, and none has been suggested, why this transaction is not within the plain and unambiguous terms of the statute.

The Commissioner recommends that the judgment of the Circuit Court be affirmed.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The judgment of the Circuit Court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.